# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUVASIVE, INC.,<br><br>                           Plaintiff,<br><br>   vs.<br><br><br><br>RENAISSANCE SURGICAL CENTER NORTH, L.P. and K&S CONSULTING ASC, L.P.,<br><br>                           Defendant. | CASE NO. 11-CV-00765 BEN MDD<br><br>ORDER:<br><br>(1) GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION;<br><br>(2) DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE IS MOOT; AND<br><br>(3) DEFENDANTS' MOTION TO TRANSFER VENUE IS MOOT<br><br>[Docket Nos. 15, 17.] |

NuVasive, Inc. ("Plaintiff") filed a Complaint alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and goods sold and delivered at agreed price. Renaissance Surgical Center North, L.P. ("Renaissance") and K&S Consulting ASC, L.P. ("K&S"), (collectively, "Defendants"), move to dismiss the Complaint for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, in the alternative, to transfer the case to the Southern District of Texas pursuant to 28 U.S.C. § 1406(a). For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss for lack of personal jurisdiction. Defendants' Motion to Dismiss for improper venue or alternatively to transfer venue is therefore deemed **MOOT**.

**FACTUAL BACKGROUND**

This action arises from Renaissance's alleged failure to pay for Plaintiff's products resulting in an outstanding balance of more than $420,000. Plaintiff is a Delaware corporation with its principal place of business in San Diego, California (Compl. ¶ 10), within the jurisdiction of the Southern District of California. Renaissance is a Texas limited partnership with its principal place of business in Humble, Texas (*Id.* ¶ 11), within the jurisdiction of the Southern District of Texas. K&S is a Texas limited partnership with its principal place of business in Houston, Texas (*Id.* ¶ 12), within the Southern District of Texas.

Plaintiff is a medical device company that sells products for the surgical treatment of spine disorders. (*Id.* ¶ 1.) It employs sales representatives that initiate contact with spinal surgeons who have a need for its products. (*Id.* ¶ 13.) If a surgeon wants to utilize Plaintiff's products, the sales representatives arrange with the surgeons and hospitals to ensure the surgeons have the products they need. (*Id.*) The hospitals are the actual purchasers of the products and are only charged for the instruments, equipment, and implants used during the surgeries. (*Id.* ¶¶ 14, 15.)

Renaissance is an ambulatory surgical center where doctors perform spinal surgeries. (*Id.* ¶ 2.) In 2008, Plaintiff's Texas-based sales representative established a business relationship with several Renaissance neurosurgeons. (*Id.* ¶ 16.) The sales representative then dealt directly with Renaissance's material manager to order the Plaintiff's products that Renaissance's neurosurgeons desired. (*See id.* ¶ 17; Crimm Decl. ¶¶ 2, 3.)

Between 2008 and May 2009, Renaissance ordered Plaintiff's medical and surgical products and paid more than $925,000 to Plaintiff. (Compl. ¶ 19.) From May 2009 through April 2010, Renassiance continued to order, and Plaintiff delivered, various medical and surgical products. (*Id.* ¶ 20.) Renaissance failed to make payments for those products resulting in an outstanding balance of more than $420,000 due to Plaintiff. (*Id.* ¶ 20.)

K&S is a general partner of Renaissance. (*Id.* ¶ 12.) Plaintiff contends K&S is liable jointly and severally for Renaissance's alleged outstanding balance because the acts herein were

1  done in "the ordinary course of the partnership business."¹ (*Id.* ¶ 27.)

2  On April 13, 2011, Plaintiff initiated this action to recover the outstanding balance due as a result of Renaissance's alleged failure to pay for ordered and used products. Specifically, Plaintiff claims Renaissance, and K&S as Renaissance's general partner, owe $421,682.24 plus related interest, finance charges, and attorneys fees. (*Id.* ¶¶ 3, 5.)

**DISCUSSION**

**A. PERSONAL JURISDICTION**

Defendants move to dismiss the Complaint for lack of personal jurisdiction. Therefore, the burden falls upon the Plaintiff to demonstrate that the court may properly exercise personal jurisdiction over the Defendants. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). Absent formal discovery or an evidentiary hearing, as here, a plaintiff need only make a prima facie showing that jurisdiction exists to survive a 12(b)(2) motion to dismiss. *Pebble Beach*, 453 F.3d at 1154; *Ziegler*, 64 F.3d at 473.

Plaintiff proffers two bases for personal jurisdiction over Defendants. First, Plaintiff argues the Court can exercise personal jurisdiction over Defendants because of a forum selection clause in the sales agreements. (Compl. ¶ 9; Opp., p. 2.) Second, Plaintiff argues Defendants have sufficient "minimum contacts" with California to support the exercise of specific personal jurisdiction over them in this matter. (Opp., p. 5.)

a. *Terms and Conditions of Sale*

Plaintiff first argues that personal jurisdiction exists over Defendants based of the forum selection clause contained in Plaintiff's T & C. (Compl. ¶ 9; Opp., p. 2.) Specifically, the forum selection clause provides:

> Any and all suits hereunder shall be brought and resolved solely and exclusively in, and the parties hereby irrevocably consent to the exclusive jurisdiction and proper venue of, the state and federal courts located in the County of San Diego, State of California, USA, and

---

¹Plaintiff contends that Renaissance's actions are really those of K&S, as general partner, because K&S is responsible for the management and operation of Renaissance. (Opp., p. 3.) Defendants do not argue otherwise. (Mot., Reply.) The Court therefore assumes that the following analysis in regard to specific personal jurisdiction based on Renaissance's actions is also applicable to K&S.

waive any objections thereto based on any ground including improper venue or Forum Non-Conveniens.

(Opp*.,* Ex. A, ¶ 11.)

Plaintiff contends that by accepting its products, Defendants assented to personal jurisdiction in this Court because the T & C govern all products Plaintiff sold to Defendants. (Opp., p. 5.) Defendants argue Plaintiff has failed to prove that Defendants agreed, or were otherwise bound by, the T & C and, thus, the forum selection clause contained therein. (Reply, p. 3.)

Key to enforcement of any forum selection clause is evidence of an actual agreement between the parties. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007). In *Holland Am. Line,* the Ninth Circuit stated:

> The fundamental element lacking here is any evidence that [defendants] agreed to the [forum selection clause in plaintiff's purchase orders] ... The missing and critical evidence is telling. [Plaintiff] has not provided ... any evidence of assent to the terms by [defendants] ... We agree with the district court that it is not enough that plaintiffs alleged to have sent the terms via email to an unspecified email address or general web address. Such an unsubstantiated and vague statement does not establish a prima facie case for jurisdiction.

*Id.* at 458 (citations omitted).

Here, the Court finds Plaintiff's have failed to prove at this stage in the case that an actual agreement existed between Plaintiff and Renaissance. Plaintiff's assertion that it sent Renaissance the T & C with its orders, without more, is insufficient to conclude that Renaissance agreed to or is otherwise bound by it. This allegation does not establish a prima facie case for jurisdiction. The Court additionally notes there is no language in the T & C suggesting that by Renaissance accepting Plaintiff's products, they were bound by the T & C, as Plaintiff argues. Accordingly, the Court finds the forum selection clause is inapplicable to the instant case.

b. *Specific Personal Jurisdiction*

Alternatively, Plaintiff contends Defendants have sufficient minimum contacts to support the Court's exercise of personal jurisdiction over Defendants. (Opp., p. 5.) "The general rule is that personal jurisdiction over [an out of state] defendant is proper if it is permitted by a long arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach,* 453 F.3d at 1154-55 (citation omitted); *see also Kulko v. Superior Court of Cal.*, 436 U.S. 84, 91

1  (1978).  California's long arm statute permits the exercise of personal jurisdiction "on any basis not
2  inconsistent with the Constitution of this state or of the United States."   Cal. Civ. Pro. § 410.10.

3    The Fourteenth Amendment Due Process Clause permits courts to exercise personal
4  jurisdiction over any defendant who has sufficient "minimum contacts" with the forum such that the
5  "maintenance of the suit does not offend traditional notions of fair play and substantial justice."
6  *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945).  A defendant's contacts must be such that he
7  should "reasonably anticipate being haled into court there."  *World-Wide Volkswagon v. Woodson*,
8  444 U.S. 286, 297 (1980).  "A court's exercise of personal jurisdiction may be general or specific."
9  *Doe v. Am. Nat'l Red Cross,* 112 F.3d 1048, 1050 (9th Cir. 1997).  Plaintiff only asserts Defendants
10 are subject to specific personal jurisdiction in the instant case.  (Opp., p. 5.)

11   The Ninth Circuit applies a three prong test to determine whether the exercise of specific
12 personal jurisdiction over a non-resident defendant is appropriate:

13   (1) the non-resident defendant must do some act or consummate some transaction with the forum or perform some act by which it purposefully avails itself of the privilege of
14   conducting activities in the forum; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be
15   reasonable.

16 *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004); *Ballard v. Savage*,
17 65 F.3d 1495, 1498 (9th Cir. 1995).

18   All three prongs of the test must be met to establish specific personal jurisdiction.
19 *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 817-18 n. 10 (9th Cir. 1988).  The plaintiff bears the
20 burden of satisfying the the first two prongs of the test.  *Schwarzenegger,* 374 F.3d at 802.  If a
21 plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a
22 compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.*

23   1. *Purposeful Availment*

24   In the contract context, plaintiffs must show the defendant "purposefully availed" itself of
25 the privilege of conducting activities in the forum.  *Id.*  Plaintiff argues Defendants purposefully
26 availed themselves of the privileges of conducting activities in California by engaging in multiple
27 business transactions with Plaintiff.  (Opp., p. 6.)  Specifically, Plaintiff contends this prong is met
28 because Defendants entered a business relationship with a California-based company; mailed

payments to California for products that were shipped from California; and communicated more than one hundred times with personnel in California. (Opp., p. 6.) For the following reasons, the Court disagrees.

In determining whether purposeful availment exists, a court analyzes the nonresident's deliberate activities within the forum in light of the nature of its contract with the forum resident. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). "Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Doe,* 112 F.3d at 1051. A court should examine the circumstances surrounding the contract, including "prior negotiations[,] contemplated future consequences ... the terms of the contract, and the parties actual course of dealing." *See Burger King Corp.,* 471 U.S. at 478.

It is clear that the existence of a contract between an out of state defendant and a California plaintiff is insufficient, by itself, to justify personal jurisdiction. *Id*. Additionally, the mere use of interstate mail, telephone or wire services is insufficient to support personal jurisdiction. *Bowen v. Lancaster*, No. 08-00159, 2008 WL 1986036, at *4 (C.D. Cal. April 30, 2008) (citing *Bell Paper Box, Inc. v. Trans W. Polymers*, 53 F.3d 920, 922-23 (8th Cir. 1995)).

Here, the Court finds the Plaintiff has not established that Renaissance purposefully availed itself of the privileges of conducting activities in California. First, the parties negotiated and executed the business arrangement from their respective states, California and Texas. Second, Renassiance personnel never traveled to California throughout the course of the parties' relationship. Third, Renaissance's product orders were all completed through Plaintiff's Texas-based sales representative. Fourth, the fact that Renaissance entered into a business arrangement with Plaintiff, a California resident, does not establish purposeful availment. Fifth, Renaissance telephonically communicating to Plaintiff personnel in California is additionally insufficient to establish purposeful availment.

Because Plaintiff's failed to demonstrate that Defendants purposefully availed themselves of the benefits and protections of this forum, the Court need not address the remaining prongs of the specific personal jurisdiction test. The Court finds Plaintiff has failed to make a prime facie

showing of jurisdiction in the instant case.  Accordingly, Defendant's Motion to Dismiss for lack of personal jurisdiction is GRANTED.

## B. VENUE

In light of the above, the Court finds Defendants' Motion to Dismiss for improper venue or, in the alternative, to transfer the case to the Southern District of Texas pursuant to 28 U.S.C. § 1406(a) is MOOT.

## CONCLUSION

For the reasons set forth above, the Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.  Defendants' Motion to Dismiss for improper venue or to transfer venue is therefore **MOOT**.  The Clerk of the Court is instructed to close the file in this case.

**IT IS SO ORDERED.**

**DATED: July 22, 2011**

**Hon. Roger T. Benitez**
**United States District Judge**